### 9542.  FARKAS v. WILLIAMS.

According to the evidence, the sale of the plaintiff's car to the defendant was not authorized or ratified by the plaintiff, and the plaintiff was entitled to recover the car. There was no evidence to support the verdict in favor of the defendant, and the trial judge erred in overruling the motion for a new trial.

        DECIDED OCTOBER 16, 1918.

Trover; from city court of Thomasville—Judge W. H. Hammond. January 16, 1918.

*Tilus, Dekle & Hopkins,* for plaintiff in error.

*J. M. Austin,* contra.

WADE, C. J. This is a trover action instituted by Sigo Farkas to recover one Ford automobile. The case was submitted to a jury, and a verdict was returned in favor of the defendant. The

plaintiff's motion for a new trial was overruled, and he excepted.
The case made out by the evidence is substantially as follows:
Farkas loaned a certain Ford automobile to McEachern to make
a trip to Camilla, Ga. McEachern drove the car to Camilla, and
later to Thomasville, where he entered into a poker game with
C. T. Williams, the defendant, and during the game, and after
imbibing too freely of liquor, he sold the car as his own property
to Williams for poker-chips and cash. After the game McEachern
told Williams that the car did not belong to him but was the
property of the plaintiff Farkas, and proposed to rescind the trade,
offering Williams, for that purpose, $10 more than had been ad-
vanced to him on the car. The offer was refused and Williams
retained possession of the car. McEachern then went to Albany,
where the plaintiff resided, and told him of the circumstances stated
above, whereupon they both boarded the train for Thomasville and
demanded the car from Williams, whose refusal to comply with
the demand resulted in the bringing of this suit to recover the car.

The evidence shows clearly that the car sued for was the prop-
erty of the plaintiff Farkas, and not that of McEachern, who sold
it to the defendant without the consent or knowledge of the true
owner. The plaintiff testified: "I am the owner of the Ford auto-
mobile described in the petition, and it is number 1401348. It is
my property and belongs to me, and I claim title to the same.
. . . I never authorized Mr. McEachern to sell or dispose of my
Ford car, now sued for, in any manner or way and have not ratified
any of his acts." McEachern testified: "The car was not mine,
but belonged to Mr. Farkas," and "Mr. Farkas, the plaintiff in
this case, never authorized me at any time to sell the same, or
put it up in a poker game. It was his property and I had no
right to use it in the manner I did." The defendant Williams tes-
tified: "I cannot swear that this car did not belong to Mr. Sigo
Farkas, but I bought it from Mr. McEachern, as I thought it was
his." Apparently, and as contended by the defendant, the jury
based its verdict on the idea that the evidence as a whole showed
that McEachern was the duly authorized agent of Farkas to sell
or trade the car sued for. However, the undisputed testimony of
both Farkas and McEachern, quoted above, absolutely disproves
that any such special agency existed, or that the latter was the
general agent of the former. The mere fact that there was some

evidence to the effect that McEachern had been on previous occasions the plaintiff's agent for a similar purpose was wholly insufficient to support a conclusion that he disposed of the car as the agent of the plaintiff on this particular occasion. Especially is this true in view of the direct, positive testimony that the car was disposed of without the authority, knowledge, or consent of the owner, and in the absence of any testimony disclosing knowledge on the part of the buyer that McEachern had ever previously acted as agent for the plaintiff in similar transactions. To the contrary, Williams (the buyer) testified that he thought at the time he purchased the car that it belonged to McEachern. Neither was there any evidence whatever tending to prove that the plaintiff ever ratified the unlawful and unauthorized sale of his car in any way. To the contrary, his testimony, as well as that of McEachern, shows conclusively that immediately upon learning of the disposal of the car he took a train for Thomasville and made demand of the defendant to return the machine.

As we view the evidence, the verdict returned is unsupported by any testimony whatever, and the judgment overruling the motion for a new trial must be

          *Reversed. Jenkins and Luke, JJ., concur.*